UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jacqueline Roberta Burke, | Civil Action No. 5:21-01295-KDW |
| Plaintiff, | |
| vs. | ORDER |
| Kilolo Kijakazi,[1] Acting Commissioner of Social Security Administration, | |
| Defendant. | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff Jacqueline Roberta Burke ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the undersigned reverses and remands the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

    A.  Procedural History

On June 17, 2017, Plaintiff filed an application for DIB, alleging an onset date of August 14, 2016. Tr. 275.[2] Her application was denied initially on January 12, 2018, and upon reconsideration

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the named defendant in this action.

[2] In Plaintiff's Brief, Plaintiff alleges the application was filed June 17, 2017. Pl.'s Br. 1; ECF No. 18. However, the record indicates the application was complete on June 21, 2017. Tr. 275. It also

on April 24, 2018. Tr. 127-30; 136-40.[3] Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). Tr. 141. On December 11, 2018, a hearing was held before an ALJ where Plaintiff and a vocational expert ("VE") both testified. Tr. 35-57. On March 13, 2019, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr. 105-116. Plaintiff requested a review of the decision by the Appeals Council, and on April 21, 2020, the Appeals Council remanded Plaintiff's case to the ALJ to consider an unadjudicated period of time for a disability determination. Tr. 124. On remand, the Appeals Council instructed the ALJ to also give further consideration to Plaintiff's maximum residual functional capacity. Tr. 124. On October 6, 2020, the ALJ conducted a second hearing, where Plaintiff and a VE testified. Tr. 34-57. On October 21, 2020, the ALJ again issued an unfavorable decision. Tr. 12-33. On March 2, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on April 30, 2021. ECF No. 1.

B. Plaintiff's Background

Plaintiff was born on September 21, 1958 and alleges that on August 14, 2016, she became unable to work due to a disabling condition. Tr. 275. In her Work Activity Report, Plaintiff lists her previous employment since February 1, 2007 as a title clerk and a pizza delivery driver. Tr. 308.[4] In her Disability Report, dated July 31, 2017, Plaintiff indicated that she completed the eleventh grade in 1975. Tr. 317. Plaintiff lists her disabling conditions as follows: lower lumbar condition, high blood pressure, diabetes, emphysema, chronic fatigue syndrome, anxiety/depression, shoulder condition,

---

appears that Plaintiff filed for Supplemental Security Income ("SSI") on August 28, 2017; however, Plaintiff does not allege this in her brief. Tr. 277.
[3] The reconsideration is dated April 24, 2018; however, both the ALJ's decision, as well as the Commissioner's Brief indicate the date of the denial upon reconsideration is April 16, 2018. Tr. 15; Def.'s Br. at 3.
[4] In her Disability Report, she additionally lists working as a general manager at a restaurant from February 2000 through February 2007. Tr. 317.

morbidly obese, and Hepatitis B and C. Tr. 316. Plaintiff lists her height as 5 feet, 3 inches and her weight as 253 pounds. Tr. 316. In a subsequent Disability Report-Appeal, dated March 14, 2018, Plaintiff indicated that her back pain has gotten worse, and she was only able to sleep in a recliner. Tr. 351. She further indicated that as of November 1, 2017, she has been diagnosed with plantar fasciitis. Tr. 351. In a more recent Disability Report-Appeal, dated June 7, 2018, Plaintiff indicated that she has had increased mobility problems on a daily basis and now uses a shower chair to bathe, a cane to ambulate on occasion, and is unable to drive. Tr. 368.

Plaintiff attended and gave testimony at two hearings, one on December 11, 2018 prior to the initial remanding of her case by the Appeals Council, and a more recent hearing on October 6, 2020. The decision of the ALJ after the October 6, 2020 hearing is the decision at issue in this case.

1. Plaintiff's Testimony

At the October 6, 2020 hearing,[5] Plaintiff testified regarding activities and her disability status for the last year of coverage that was previously not considered. Tr. 63. At this more recent hearing, Plaintiff testified that some of the medication she was taking, including narcotics for pain, made her "loopy" or drowsy. Tr. 65. Plaintiff testified that she continued to have problems reading for pleasure because she has trouble understanding what she is reading. Tr. 65-66. Plaintiff testified that she can hardly walk due to numbness and pain that radiates down from her back into her legs, as well as issues affecting her feet due to diabetes. Tr. 66-67. Plaintiff testified she has been using both a walker and a cane for approximately three or four years, though the assistive device was not specifically prescribed. Tr. 67. Plaintiff testified that she had to lie down frequently during the day. Tr. 68.

Plaintiff testified that in November of 2018 she broke her wrist subsequent to a fall and has had ongoing issues related to that fall since then. Tr. 68-69. Plaintiff also explained that she has issues

---

[5] The hearing appears to have been conducted telephonically, despite a notation stating that claimant appeared in person. Tr. 61. The ALJ indicated that due to COVID-19, all parties were appearing by telephone. Tr. 61.

with her neck where pain begins in her neck and travels down her arms, causing numbness throughout her arm and hand. Tr. 69. Plaintiff testified that in the last three years, her ability to sit has gotten "a little bit worse." Tr. 70. Relatedly, Plaintiff testified that she can sit without having to shift for approximately five minutes. Tr. 71. Plaintiff testified that she has been unable to maintain her hypertension and diabetes, due in part to the pain she is experiencing, as well as the inability to be as active as she would like. Tr. 71.

At the hearing dated December 11, 2018, Plaintiff appeared before the ALJ and testified that she lived alone in a home. Tr. 38. She testified she was unable to drive because she has pain that starts in her back and travels down to her legs, as well as pain related to neuropathy and a pinched nerve. Tr. 39. Plaintiff testified she was receiving employment benefits and had previously worked as an office manager/title clerk, a delivery driver for Papa John's, a dispatcher for two different medical transportation companies, and a general manager at two different restaurants. Tr. 40-41. At this hearing, Plaintiff explained that she believes she is unable to work due to the bones in her back "closing on" her nerves causing pain that radiates to her shoulders and arms, as well as lower back problems, pinched nerves, diabetes resulting in neuropathy, and plantar fasciitis. Tr. 42. Plaintiff also described issues she has related to medications that she believes give her nausea. Tr. 43. Plaintiff testified she also has mental health issues including anxiety and severe depression but is unable to receive treatment due to financial constraints. Tr. 43-45. Plaintiff testified that she has a friend who handles all of her household chores for her. Tr. 46. Plaintiff also testified that she did not participate in any outdoor activities. Tr. 47.

Plaintiff testified that around the time of the hearing in 2018, she had lost her balance and broken her arm. Tr. 48. She testified that she is unable to bend, use stairs or ladders, or sit for long periods without discomfort. Tr. 48-49. Plaintiff testified that she was taking medication to help her with her medical ailments, but that her doctor indicated she was not healthy enough for surgery. Tr.

4

50-51. Instead, Plaintiff underwent several injections for pain in her back and neck but eventually this was no longer an option. Tr. 51. Plaintiff testified that she left her last job because she unable to type because her fingers would remain numb. Tr. 52.

      2.   Testimony of the VE

VE Coraetta K. Harrelson testified at the first administrative hearing on December 11, 2018. The VE described Plaintiff's past relevant work ("PRW") as: (1) officer manager, Dictionary of Occupational Titles ("DOT") number 169.167-034, sedentary, SVP of 7; (2) motor vehicle dispatcher, DOT number 249.167-014, sedentary, SVP of 5; (3) restaurant manager, DOT number 187.167-106, light exertional level, SVP of 7; and (4) delivery driver, DOT number 299.477-010, medium exertional level, SVP of 2. Tr. 55.

> The ALJ asked the VE this hypothetical:
>
> assume a hypothetical individual of the claimant's age and education with those past jobs, further assume that this individual was sedentary, can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. Occasionally stoop, kneel, crouch and crawl. Must avoid concentrated exposure to pulmonary irritants, such as concentrated odors, dusts, and fumes. And avoid concentrated exposure to hazards. Would that individual be able to do any of the past work?

Tr. 55. The VE responded that the sedentary job of office manager as well as motor vehicle dispatcher would be appropriate. Tr. 56. Plaintiff's attorney then posed a second hypothetical to the VE:

> if the same as your last [hypothetical], if hypothetical claim [sic] that an individual was –needed to miss two days or more of work, would that affect the jobs that you just listed?

Tr. 56. The VE testified that the individual would be unable to maintain full-time employment. *Id.* The attorney also asked if the hypothetical individual was unable to perform fine manipulation, would that affect the jobs listed. *Id.* The VE testified that the hypothetical individual would be unable to maintain full-time employment if she was unable to frequently use her fingers *Id.*

5

II. Discussion

    A. The ALJ's Findings

In her most recent decision dated October 21, 2020, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 14, 2016 through her date last insured of December 31, 2018 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: chronic obstructive pulmonary disease (COPD); lumbar degenerative disc disease; and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasional climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching and crawling; avoiding concentrated exposure to pulmonary irritants such as concentrated odors, dusts, and fumes; and avoiding concentrated exposure to hazards.

6. Through the date last insured, the claimant was capable of performing past relevant work as an office manager and motor vehicle dispatcher. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 14, 2016, the alleged onset date, through December 31, 2018, the date last insured (CFR 404.1520(f)).

Tr. 17-26.

B. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[6] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's

---

[6] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step Three).

7

disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he or she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a),(b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his or her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he or she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S.

389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.   Analysis

Plaintiff raises several arguments to support a finding that remand is appropriate in this case. Briefly, Plaintiff argues that: (1) the ALJ failed to properly consider Listing 1.04; (2) the ALJ did not explain the findings regarding Plaintiff's residual functional capacity (the "RFC") as required under Social Security Ruling 96-8p; (3) the ALJ failed to properly assess medical source opinion evidence; and (4) the ALJ failed to properly evaluate Plaintiff's subjective symptoms.

9

1. Listing 1.04 Disorders of the Spine

Plaintiff argues that the ALJ did not appropriately consider whether Plaintiff met the requirements for disability under Listing 1.04A, despite finding that Plaintiff suffered from the severe impairment of degenerative disc disease. Pl.'s Br. 17. The Commissioner disagrees. In response, the Commissioner argues that, when read as a whole, the ALJ's decision provides a sufficient discussion of the evidence to support a finding that Plaintiff did not meet Listing 1.04A. Def.'s Br. 6.

For Plaintiff to be able to show that her impairment meets a listing, the impairment must meet *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). It is not enough that the claimant have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); *see Bowen v. Yuckert*, 482 U.S. at 146 and n.5 (noting the claimant has the burden of showing that [her] impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires [her] to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period . . . during which all of the criteria in the Listing of Impairments [were] met." *DeLorme v. Sullivan*, 924 F.2d 841, 847 (9th Cir. 1991) (finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

The Fourth Circuit has explained that an ALJ must identify the relevant listed impairments and compare each of the listed criteria to the evidence of a claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Without this type of explanation, it becomes impossible to determine whether the ALJ's determination is supported by substantial evidence. *Id.* At the same

time, an ALJ is not required to "explicitly identify and discuss every possible listing; rather, he is compelled to provide a coherent basis for his Step Three determination, particularly where the 'medical record includes a fair amount of evidence' that a claimant's impairment meets a disability listing." *Ezzell v. Berryhill*, 688 Fed. App'x 199, 200 (4th Cir. 2015) (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

> Listing 1.04A provides:
>
> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04.[7] In her decision, the ALJ states she specifically considered whether Plaintiff's degenerative disc disease meets the requirements of Listing 1.04 and further states:

> evidence of record fails to indicate that the claimant suffers from a disorder of the spine resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression with limitation of motion and sensory loss, spinal arachnoiditis manifested by severe burning or painful dysesthesia, or lumbar spinal stenosis resulting in pseudoclaudication and the inability to ambulate effectively.

Tr. 20.[8] The ALJ further indicated that she considered Acquiescence Ruling 15-1(4). Tr. 20. The ALJ did not provide any additional rationale for her finding that Plaintiff failed to meet Listing 1.04.

---

[7] The Social Security Administration recently updates the way it evaluates many back and neck impairments. The Listing of Impairments was revised after the ALJ issued a decision in this case. Thus, the former Listing 1.04(A) was revised is now Listing 1.15, effective April 2, 2021. The revised listing requires additional criteria be met prior to a finding of disability. *See* 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020). If a court reverses a final decision and remands a case for further administrative proceedings after the effective date of the final rules, the final rules will be applied to the entire period at issue in the decision made after the court's remand. 85 Fed. Reg. 78164, n. 2.

[8] Part of the language in the ALJ's decision is found in other section of former Listing 1.04.

Plaintiff asserts that components of the record support a finding that she satisfies the criteria required to meet the listing. Pl.'s Br. 18. Plaintiff first points to an MRI and an x-ray of her lumbar spine, as well as orthopedist Dr. Scott Ellison's findings to show that Plaintiff suffered from nerve root compression. Pl.'s Br. 18. The Commissioner rejects Plaintiff argument and asserts that Dr. Ellison included a generic diagnostic code, which does not change the fact that "objective diagnostic imaging does not document nerve root compression." Def.'s Br. 9. In reviewing Dr. Ellison's records from October 20, 2017, his examination of the imaging showed severe stenosis at L4-5 with right paracentral protrusion deflecting the right L5 nerve root, and disc degeneration throughout with 80% disc space narrowing at L5-S1. Tr. 547. He assessed Plaintiff as having spinal stenosis of the lumbar region with neurogenic claudication and lumbar disc prolapse with root compression. Tr. 547-48. The undersigned does not find that it is clear whether the medical record simply includes a general diagnostic code, particularly when looking at the entire record, it indicates, "right paracentral protrusion deflecting right L5 nerve root." Tr. 547. As indicated below, other records assess Plaintiff as having radiculopathy. Further, Plaintiff complains throughout the record of having pain or numbness in her extremities. It is apparent the ALJ reviewed this record because she specifically referenced it elsewhere in her decision as support when indicating that Dr. Ellison referred Plaintiff to pain management. Tr. 22. The ALJ did not otherwise consider these findings. Tr. 22.

Plaintiff further points to the records of Dr. Dora Anguelova, a consultative evaluator, to show that Plaintiff met the criteria of having a positive leg raise test, as included in Listing 1.04A. Pl.'s Br. 18. Dr. Dora Anguelova assessed Plaintiff on November 8, 2017 and indicated that she had a "positive leg raise on the lower left extremity." Tr. 519.[9] Dr. Anguelova noted in her assessment of Plaintiff that she has "very well documented cervical radiculopathy as well as lumbar radiculopathy." Tr. 519.

---

[9] Plaintiff also contends that the ALJ failed to consider or evaluate Dr. Anguelova's opinion. Pl.'s Br. 36. The Commissioner argues the doctor's statements are on issues reserved to the Commissioner, thus there was no error. Def.'s Br. 22.

The Commissioner argues that the Listing requires evidence of positive straight leg raise testing in both the sitting and supine positions, and there is no evidence of a test in both of these positions. Tr. 10. This is correct. *See Norris v. Saul*, 9:18-cv-2973-DCN, 2020 WL 255703 (D.S.C. Jan. 17, 2020). However, the Commissioner then argues that the evidence from an October 2017 exam of a straight leg test does not indicate whether it was in the sitting or supine position; thus, Plaintiff's argument must fail. First, the undersigned notes that this record is not the only evidence of positive straight leg testing. Second, records from November 2016 also indicate positive straight leg raise bilaterally. Tr. 450. Unlike in *Norris*, where the ALJ cited to medical evidence within the record including "few, if any positive straight leg raises," the ALJ in this case did not consider the straight leg testing, or any other objective or diagnostic testing when considering Listing 1.04. Further, while the ALJ discussed Dr. Anguelova's assessment and indicated Plaintiff had a positive leg raise, the ALJ did not note that Dr. Anguelova found Plaintiff's lumbar radiculopathy to be well-documented, which would tend to support a finding of nerve root compression.

Plaintiff cites to records from November 2016 wherein Plaintiff had positive straight leg raises bilaterally, and she was assessed as having radiculopathy in both the lumbar and cervical region. Tr. 450. Despite considering this record and indicating that the physician's findings revealed "no tenderness to palpation" and that she ambulated with a non-antalgic and non-spastic gait, *See* Tr. 22, the ALJ did not note the other findings that Plaintiff had positive straight leg raises or that she had "aggravation" of her back and buttock pain with lumbar flexion. Tr. 450. While it is unclear whether the leg raise testing evidence in the record was performed in a sitting or supine position, the ALJ did not consider the testing *at all* in analyzing the Listing 1.04. Instead, the ALJ succinctly stated that the record failed to indicate that Plaintiff suffered from compromise of a nerve root or the spinal cord with evidence of nerve root compression. Nowhere in the analysis of Listing 1.04 does the ALJ reference a lack of straight leg testing.

13

Plaintiff also points to records from 2015 wherein a physical therapist indicated Plaintiff was exhibiting moderate tenderness and tone near her left gluteus medius, and that she had strength and range of motion deficits associated with pain in her lower back and leg. Pl.'s Br. 18; Tr. 439; Tr. 441. The Commissioner contends that Plaintiff did not experience any motor loss or atrophy with muscle weakness accompanied by sensory or reflex loss, thus she cannot meet Listing 1.04. Def.'s Br. 9. However, in September of 2015, several of Plaintiff's treatment records indicate mild to moderate range of motion restrictions, impaired mobility in Plaintiff's lower back limiting "functional abilities," and strength and range of motion deficits, including functional deficits in standing, transfers, and ambulation activities. Tr. 1F at 431, 435; 437; 439; 441. In November of 2016, Plaintiff's medical records indicate increasing low back pain that radiates down the leg into the heel and mid-calf and aggravation of her back and buttock pain with lumbar flexion, though she did have 5/5 strength in her lower extremities. Tr. 2F at 150. One medical provider indicates in an August 8, 2019 record that Plaintiff was having back pain, extremity pain, muscle pain and joint pain, and upon physical examination, she was tender to palpation in her right hip but also indicated Plaintiff did not have loss of strength. Other records indicate normal motor strength and reflexes. Tr. 9F at 501; Tr 20F at 579; Tr. 23F at 614; Tr. 23F at 633. However, again none of these records were referenced, nor did the ALJ explain or point to these findings as support in analyzing whether Plaintiff met Listing 1.04A. Finally, Plaintiff asserts that she continually complained of right lower back pain throughout the duration of treatment. Pl.'s Br. 21. The Commissioner contends this evidence is not sufficient to meet the stringent requirements of Listing 1.04A. Def.'s Br. 10.

Here, the ALJ did not specify which criteria in the Listing lacked evidentiary support as the Commissioner now attempts to do before the court. The ALJ did not analyze Plaintiff's straight-leg testing or otherwise reference the alleged lack of evidence related to this testing. Similarly, the ALJ did not cite to a lack of evidence in the medical records of motor loss as a reason to reject Listing

1.04. Accordingly, it is unclear whether the reason the Commissioner provides for the ALJ's Listing determination is the actual reason for the ALJ's determination or if there was some other reason. The court is not to undertake an analysis that is not reflected in the ALJ's decision. *See generally SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); *see also Wyatt v. Bowen*, No. 89–2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) ( "[T]he duty of explanation will be satisfied when the ALJ presents '[the court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983), and citing *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985))). At this stage of review, the court is to consider whether the ALJ's decision is supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). When, as here, the ALJ's analysis of why Plaintiff fails to meet a listing lacks support, it is "impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Therefore, the undersigned recommends remand so that the ALJ may provide the requisite analysis, as well as consider the evidence cited above.

### 2. Plaintiff's Remaining Allegations

Plaintiff also argues that the ALJ failed to properly evaluate the RFC, failed to properly evaluate the opinion evidence of two medical professionals, and failed to properly evaluate Plaintiff's subjective symptomology. Pl.'s Br. 22-44. The Commissioner argues that substantial evidence supports the ALJ's analysis of the medical opinions. Def.'s Br. 11-25. Because the undersigned finds the ALJ's failure to properly explain her Step Three findings is a sufficient basis to remand the case to the Commissioner, the undersigned declines to specifically address Plaintiff's additional allegations of error. However, upon remand, the Commissioner should take these allegations into

consideration. Specifically, the undersigned finds that the Commissioner should pay particular attention to the analysis afforded whether Plaintiff's diabetes and hypertension are severe impairments as provided for at Step Two of the sequential evaluation. A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1522(a). Here, Plaintiff points to several places within the medical record that reflect Plaintiff had very high blood pressure readings, along with several other symptoms related to hypertension. Pl.'s Br. 28. Similarly, Plaintiff alleges that she was diagnosed with diabetes, and had symptoms, such as numbness or neuropathy. Pl.'s Br. 14-15; 29. Accordingly, the Commissioner should pay particular attention to the determination of whether these medical conditions are considered "severe," as outlined in the regulations, upon remand.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the Commissioner's Listing analysis is supported by substantial evidence or is without legal error. Based on the foregoing, the court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this order.

IT IS SO ORDERED

August 18, 2022                                         Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge